UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Joseph H. Whitney,

                Plaintiff,

v.

The Guys, Inc., Agora Solution Corp., MyBillingServices, Inc., Info Billing, Inc., MyTeleservices, Inc., LaurenTel, Inc., GreenTreeData, Inc., LowCostBilling, Inc., YourBillingSolutions, Inc., MySuperLotto, Inc., MyPrizeAwards Corp., MyServiceAndSupport, Inc., XYZ, Inc., and John R. Morrison,

                Defendants.

Civ. No. 10-4296 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

---

Mark J. Kallenbach, Kallenbach Law Office, Minneapolis, Minnesota, for Plaintiff.

Kevin R. Coan, Charles R. Alden, Hinshaw & Culbertson LLP, Minneapolis, Minnesota, for Defendants.

---

## INTRODUCTION

This action arises out of a purported agreement between Plaintiff Joseph H. Whitney and Defendant John R. Morrison, in which the two allegedly agreed (1) to form Defendant The Guys, Inc. ("TGI"), (2) that each would own one half of TGI's outstanding shares, and (3) that a number of other corporations would be wholly-owned subsidiaries of TGI.[1]  Whitney claims he paid $150,000 in exchange for his ownership

---

[1] It appears that some of the other corporate entities were already in existence at the time, while others were not yet incorporated.

interest in TGI and the other corporations and later made a $25,000 capital contribution to one of the corporate Defendants.  He now asserts that Defendants have refused to acknowledge his ownership interest in TGI or any of the other corporate Defendants and have denied him numerous shareholder rights.  Defendants now move to dismiss his claims.  For the reasons set forth below, the Court will grant their Motion.

## BACKGROUND

Whitney has asserted ten separate claims:

I.   Declaratory judgment that he owns 50% of the outstanding shares of TGI and the other Corporate Defendants, as well as any other derivative entities;
II.  Breach of contract;
III. Promissory estoppel;
IV.  Unjust enrichment;
V.   Fraud;
VI.  Misrepresentation;
VII. Accounting;
VIII. Liquidation arising from a breach of his shareholder's rights;
IX.  Breach of fiduciary duty; and
X.   Conversion.

Each arises from the following factual allegations set forth in his Complaint.[2]  On April 25, 2005, Whitney and Morrison formed TGI.  (Compl. ¶ 9.)  They also agreed that each would own one-half of TGI's outstanding shares.  (Id. ¶ 10.)  There is no suggestion that the agreement was ever reduced to writing; Whitney does not attach any written contract to his Complaint or allege its terms in any detail.  He avers, however, that pursuant to his agreement with Morrison, some of the other corporate Defendants—MySuperLotto, Inc., MyServiceAndSupport, Inc., Agora Solution Corp., and an unformed corporation,

---

[2] Although the Court simply refers throughout to "the Complaint," the operative pleading here is actually Whitney's Second Amended Complaint (Doc. No. 5.)

MySportsStats, Inc.—were to be wholly owned subsidiaries of TGI.  (Id. ¶¶ 11–12.)  The remaining corporate Defendants[3] are not alleged to have been discussed in the contract, but Whitney nonetheless asserts that each was to be co-owned by himself and Morrison in equal shares.  (Id. ¶ 13.)

Whitney claims to have paid $150,000 in April 2005 for "one half [] of TGI's outstanding shares and one half [] of those Corporate Defendants' outstanding shares that are not wholly owned subsidiaries of TGI."  (Id. ¶ 14.)  It is unclear whether this payment was to Morrison, to TGI, to another corporate Defendant, or to some other entity entirely.  Whitney also made "an additional capital contribution" of $ 25,000 to Defendant Agora Solution Corp. in November 2005.  (Id. ¶ 15.)

Whitney avers that despite his agreement with Morrison and these payments, Defendants have refused to acknowledge his ownership interest in any of the entities.  Specifically, he claims he has not been allowed to inspect corporate documents, take part in corporate decisions, or receive a share of profits.  (Id. ¶¶ 16–19.)  Instead, Morrison has "taken and converted the assets of the Corporate Defendants for his own personal use," without Whitney's approval or consent.  (Id. ¶ 19.)  Finally, Whitney asserts that Defendants have "transacted millions of dollars of business resulting in millions of dollars of profits, which Morrison and the Corporate Defendants refuse to provide an accounting to Whitney."  (Id. ¶ 18.)

---

[3] Numerous corporate Defendants are identified in Whitney's Complaint.  (Compl. ¶¶ 2–5.)  Additionally, Whitney names "XYZ, Inc." as a defendant, for "unknown derivative business entities" of the corporate Defendants "which Morrison created without Whitney's knowledge or consent to transact business to enrich himself at Whitney's expense."  (Id. ¶ 7.)

Whitney commenced this action in October 2010. Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting *inter alia* that Delaware's statute of limitations bars Whitney's claims.[4] Prior to hearing the Motion, the Court ordered supplemental briefing on the appropriate choice of law. A hearing was held, after which the Court referred the parties to Magistrate Judge Boylan for a settlement conference. (See Doc. No. 32.) Having failed to reach a settlement, the Court returns to the merits of Defendants' Motion. For the reasons below, it will be granted.

## STANDARD OF DECISION

The Supreme Court set forth the standard for evaluating a motion to dismiss under Rule 12(b)(6) in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 547. In other words, there must be sufficient facts set forth in the complaint to "nudge[] the[] claims across the line from conceivable to plausible." Id. at 570. The Eighth Circuit has added that a plaintiff must "assert facts that affirmatively and plausibly suggest that [he] has the right he claims, rather than facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citing Twombly, 550 U.S. at 554-56). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

For purposes of a motion to dismiss, the Court must take the facts alleged in the Complaint as true, and any allegations or reasonable inferences arising from the

---

[4] According to the Complaint, all of the corporate Defendants are Delaware corporations.

Complaint must be interpreted in the light most favorable to the plaintiff. Twombly, 550 U.S. at 554–56. The Court need not, however, accept legal conclusions. Iqbal, 129 S. Ct. at 1949. A complaint does not state a claim if its well-pled facts support no more than an inference of the mere possibility of misconduct. Id. at 1950.

## ANALYSIS

Defendants contend that Whitney's claims fail as a matter of law for a variety of reasons. They argue at length that Delaware law applies and its three-year statute of limitations bars the claims. The issue of whether Delaware or Minnesota law (which has a longer limitations period) governs was extensively briefed at the Court's request. Ultimately, however, the Court finds that Whitney's declaratory-judgment claim (Count I), tort claims (Counts V, VI, and X), and shareholder claims (Counts VII, VIII, and IX) fail as a matter of law regardless of which state's law applies, so it need not conduct a choice-of-law analysis with respect to these claims. With respect to the contract claims (Counts II, III, and IV), the Court determines that Delaware law governs and the claims are time-barred. The Court takes up each category of claims in turn.

**I.    Declaratory-judgment claim (Count I)**

Defendants argue that Whitney's declaratory-judgment claim (Count I) must be dismissed because it duplicates the breach-of-contract claim. The Court agrees; thus, it need not answer the question of which state's law governs this claim.

Numerous courts have held that "[w]hen a request for a declaratory judgment 'alleges . . . duties and obligations under the terms of a contract and asks the court to declare those terms breached[, it] is nothing more than a petition claiming breach of

contract.' Accordingly, it is subject to dismissal." Daum v. Planit Solutions, Inc., 619 F. Supp. 2d 652, 657 (D. Minn. 2009) (Kyle, J.) (quoting Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc., No. 4:06CV1308, 2007 WL 2811080, at *2 (E.D. Mo. Sept. 24, 2007)); accord StreamCast Networks, Inc. v. IBIS LLS, No. CV 05-04239, 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006) (collecting cases). Whitney's request for declaratory judgment concerns precisely the same events giving rise to his contract claim: refusal to acknowledge his ownership, allow him to participate in corporate governance, or share profits. (Compl. ¶¶ 21–23.) In other words, he alleges duties and obligations stemming from the purported contract granting him one-half of the outstanding shares, and he asks the Court to declare him the one-half owner of the corporate Defendants, thereby effectively declaring that the contract existed and was breached. Count I "is nothing more than a petition claiming breach of contract," Daum, 619 F. Supp. 2d at 657, and its dismissal is appropriate as a matter of law.

## II.     Tort Claims (Counts V, VI, and X)

Whitney asserts three tort claims: fraud, misrepresentation of intention, and conversion. They arise from the purported agreement between Whitney and Morrison and Defendants' failure to recognize the ownership rights for which the agreement allegedly provided. Defendants argue that Delaware law applies and the claims are time-barred. The Court need not conduct a choice-of-law analysis for these claims, however, because the claims fail as a matter of law even if they are not time-barred.

"Minnesota does not recognize an independent tort for conduct that merely constitutes a breach of contract." First Integrity Bank, N.A. v. Ohio Cas. Ins. Co., Civ.

6

No. 05-2761, 2006 WL 1371674, at *6 (D. Minn. May 15, 2006) (Davis, J.) (citing UFE Inc. v. Methode Electronics, Inc., 808 F. Supp. 1407, 1410 (D. Minn. 1992) (Doty, J.); Wild v. Rarig, 234 N.W.2d 775, 790 (1975)).[5] Where the "actions at the heart" of a tort claim are "identical to those which constitute a breach of contract," a plaintiff cannot state a claim for a separate tort. Id. (granting motion to dismiss on misrepresentation claim). The essence of Whitney's fraud and misrepresentation claims is that Morrison promised that Whitney would own one-half of TGI and the corporate Defendants but then "ran off with" Whitney's money and never recognized Whitney's ownership. (Compl. ¶¶ 37-40, 43-45.) Similarly, his conversion claim asserts that Morrison "retained dominion and control over [the] shares" he agreed would be Whitney's by "refusing to acknowledge Whitney's ownership interest therein." (Compl. ¶¶ 62-63.) The wrongful conduct underlying these tort claims is identical to Whitney's contract claim—that Morrison promised to give him one-half ownership of certain corporate entities in exchange for monetary contributions, and Morrison thereafter failed to recognize Whitney's ownership interest. Thus, the tort claims fail as a matter of law.

### III.   Contract and Quasi-Contract Claims (Counts II, III, and IV)

Defendants again argue that Delaware law applies to Whitney's contract and quasi-contract claims, and those claims are barred by the statute of limitations. These

---

[5] Delaware courts recognize this same rule. See, e.g., Koruda v. SPJS Holdings, L.L.C., 971 A.2d 872, 889 (Del. Ch. 2009) ("Where . . . the plaintiff's claim arises solely from a breach of contract, the plaintiff 'generally must sue in contract, and not in tort.'") (citing Data Mgmt. Internationale, Inc. v. Saraga, No. 05C-05-108, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007) ("In preventing gratuitous 'bootstrapping' of contract claims into tort claims, courts recognize that a breach of contract will generally not constitute a tort.") (citations omitted)).

claims all arise from Whitney's alleged agreement with Morrison, which he asserts was formed in April 2005. This action was not commenced until October 2010. Delaware's three-year statute of limitations, if applicable, would thus operate to bar the claims, see Del. Code Ann. Tit. 10, § 8106, while Minnesota's longer limitations period (six years) would not, see Minn. Stat. § 541.05, subd. 1. Pursuant to Minnesota's borrowing statute, if a claim is based upon the substantive law of another state, that state's limitations period also applies. See Minn. Stat. § 541.31(a)(1). The Court must therefore decide whether Delaware's substantive law applies to these claims. It concludes that it does, and the claims are time-barred.[6]

To determine which state's law applies, Minnesota's choice-of-law rules require a multi-step analysis.[7] The first step is to determine whether an "actual conflict" exists between the laws of the two states. See Jepson v. Gen. Cas. Co. of Wis., 513 N.W.2d 467, 469 (Minn. 1994). "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co., 604 N.W.2d 91, 94 (Minn. 2000). If an actual conflict exists, the second step is to

---

[6] Although a plaintiff typically need not plead around an affirmative defense, the Eighth Circuit has held that "the defense of bar by limitations" may be raised in a motion to dismiss "where it affirmatively appears on the face of the complaint that the action is barred by limitations, and no facts are alleged to avoid the bar of the statute." Bricton v. Woodrough, 164 F.2d 107, 110-11 (8th Cir. 1947); accord, e.g., Dixon v. Martin, 260 F.2d 809, 811 (5th Cir. 1958) (claim may be dismissed if court "would have to indulge in pure speculation and conjecture to construe [the complaint] to state a claim which accrued within [the limitations period]"); St. Paul Fire & Marine Ins. Co. v. Cont'l Bldg. Operating Co., 137 F. Supp. 493, 495 (W.D. Mo. 1956) (citing Bricton, 164 F.2d at 110-11). Since it affirmatively appears on the face of Whitney's Complaint that these claims are time-barred, the Court can (and will) dismiss them at this juncture.

[7] "In a diversity case, a federal court applies the choice of law rules of the forum state." Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1393 (8th Cir. 1997); accord Fuller v. Hartford Life Ins. Co., 281 F.3d 704, 707 (8th Cir. 2002).

determine whether the law of both states may be constitutionally applied to the case. Jepson, 513 N.W.2d at 469. Finally, if there is an actual conflict and both states' laws could be constitutionally applied, the Court must evaluate five factors to determine which law should apply: (1) predictability of results; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. Id. at 470. Certain factors carry more or less weight for certain types of claims. E.g., Burks v. Abbott Labs., 639 F. Supp. 2d 1006, 1013 (D. Minn. 2009) (Tunheim, J.) ("[T]he first and third factors have little value in tort cases, and the fifth factor does not appear to carry much weight in a choice-of-law analysis.") (citing Jepson, 513 N.W.2d at 470–73).

Both parties agree there is an actual conflict here. Defendants concede that either state's law could constitutionally apply. Whitney contends, however, that it would be unconstitutional to apply Delaware law to his contract claims because the state had no contact with the alleged contract. This argument is unavailing. The subject of the purported contract was ownership of Delaware corporations, and the alleged breach involved those same corporations' conduct and actions regarding their ownership. In the Court's view, this is sufficient contact to permit Delaware law to constitutionally apply.

Although Defendants concede Minnesota law *could* constitutionally apply, they argue that Delaware law is the appropriate choice for the contract and claims. They urge the Court to apply the internal-affairs doctrine, "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation

9

and its current officers, directors, and shareholders." Atherton v. F.D.I.C., 519 U.S. 213, 223–24 (1997) (citations omitted); accord Transocean Grp. Holdings Party Ltd. v. S.D. Soybean Processors, LLC, 663 F. Supp. 2d 731, 742 n.5 (D. Minn. 2009) (discussing the doctrine); Potter v. Pohlad, 560 N.W.2d 389, 391 (Minn. Ct. App. 1997) (citations omitted). Pursuant to this doctrine, Delaware law would govern the internal affairs of the corporations at issue since all are incorporated in Delaware.

In the Court's view, Whitney's contract and quasi-contract claims cannot be separated from the "internal affairs" of the corporate Defendants. The alleged contract provided that Whitney would contribute $150,000 in return for half of the outstanding shares of TGI and its subsidiaries.[8] (Compl. ¶¶ 14, 26.) The "breach" Whitney identifies was the Defendants' refusal to (1) allow him "to enjoy his share of the profits generated by the Corporate Defendants," (2) let him "participate in the decision making process," or (3) provide "an accounting of [the corporations'] income, expenses, assets, and liabilities." (Compl. ¶ 26.) Whitney claims he "is entitled to the pecuniary benefits of owning one-half of TGI and those Corporate Defendants who are not TGI's wholly owned subsidiaries . . . *nunc pro tunc* from the formation of each entity to the present time" (id. ¶ 27), and he seeks recovery including the profits of the corporate Defendants and any derivative entities and "appreciation of [his] shares" in those entities. (Id. ¶ 28.) Whitney identifies no contractual terms that obligated Defendants to act in any of the ways he claims they failed to act; rather, the rights and obligations at issue exist under

---

[8] Whitney also alleges that he later contributed an additional $25,000, but he does not assert any terms associated with that sum, simply labeling it a "capital contribution" for Agora Solutions Corp. (Compl. ¶ 15.)

10

Delaware corporate law.  Furthermore, the Court could not grant Whitney the relief he seeks (the benefits of share ownership, corporate profits, appreciation of the shares, etc.) without directly impacting and disrupting the current ownership structure of the corporate Defendants.  Accordingly, in this Court's view, Delaware law must control.

The same reasoning applies to Whitney's quasi-contract claims of promissory estoppel (Count III) and unjust enrichment (Count IV).  Like the breach-of-contract claim, both arise from the same alleged agreement between Whitney and Morrison and the assertion that Whitney never received the shares allegedly promised in exchange for his payment.  See, e.g., Restatement (Second) of Conflict of Laws § 302, cmt. e (1971). (noting the internal-affairs doctrine applies to issues such as "steps taken in the course of the original incorporation" and "the issuance of corporate shares").  Again, these claims directly involve Whitney's rights as a shareholder and the issuance of shares he believes he was entitled to pursuant to the agreement.

Moreover, even without the internal-affairs doctrine, Minnesota's five-factor choice of law analysis favors applying Delaware law to the contract and quasi-contract claims.  The first factor, predictability of results, is typically given great weight in "consensual transactions where the parties desire advance notice of which state law will govern future disputes," such as contract claims.  Myers v. Gov't Emp. Ins. Co., 225 N.W.2d 238, 242 (Minn. 1974).  Here, although the alleged agreement was formed in Minnesota, the subject of that agreement was formation and ownership of Delaware corporations.  The parties to the agreement were citizens of Texas and Minnesota, yet they opted to incorporate the businesses at issue under Delaware law.  Hence, it is

reasonable to assume they intended Delaware law to apply to those corporations and, by extension, to issues involving share ownership, issuance of shares, and rights of shareholders related to those corporations.

Likewise, the second and fourth factors favor Delaware law.  The second factor, maintenance of interstate order, is concerned with states trying to "sustain, rather than subvert, each other's interests in areas where their own interests are less strong." Jepson, 513 N.W.2d at 467.  In Jepson, an insurance-coverage dispute where both Minnesota and North Dakota had some contact with the facts of the case, the court noted, "Minnesota does not have an interest in encouraging forum shopping, particularly where we would be sending a message to those people living on our borders to take advantage of the benefits our neighboring states offer in terms of lower insurance rates, lower vehicle registration fees, and sales taxes, and then, if they are injured, take advantage of Minnesota's greater willingness to compensate tort victims." Id. at 472.  Similarly here, Whitney should not be allowed to enter an agreement that involves forming corporations in Delaware to take advantage of its favorable corporate laws, yet now choose Minnesota as a forum to pursue remedies after things did not go as planned due to its longer limitations period. His contract claims are inseparable from issues of corporate formation and shareholder rights, and Minnesota's interest in these is "less strong" than Delaware's.

Relatedly, under factor four, Minnesota has very little interest in applying its own law to this case.  "When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, . . . clearly the law of the interested state should be applied." Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.,

590 N.W.2d 670, 674 (Minn. Ct. App. 1999), aff'd, 604 N.W.2d 91.  A state typically has an interest in protecting its own citizens' rights, but Whitney is not a Minnesota citizen.  Reflecting this, Minnesota's borrowing statute provides that if a resident plaintiff has a cause of action that is barred by the statute of limitations of the state where it arose but not barred by Minnesota law, he can bring the cause of action in Minnesota; however, this added protection is not extended to non-resident plaintiffs such as Whitney.  See Minn. Stat. § 541.31, subd. 2.  On the other hand, Delaware has cultivated policies and enacted legislation encouraging businesses to incorporate under its laws.  It has a strong interest in protecting those corporations and consistently applying its laws to them.

For all of these reasons, Delaware's substantive law applies to Whitney's contract-related claims arising from his alleged agreement with Morrison.  Hence, Delaware's statute of limitations also applies pursuant to Minnesota's borrowing statute.  It "affirmatively appears on the face of the complaint" that the agreement was formed (if at all) in April 2005, and "no facts are alleged to avoid the bar" of a three-year statute of limitations.  Bricton, 164 F.2d at 110-11.  Accordingly, these claims will be dismissed.

## IV.     Shareholder claims – Accounting (Count VII), Breach of Shareholder Rights (Count VIII), and Breach of Fiduciary Duty (Count IX)

Whitney asserts three claims under Delaware corporate law— an "accounting," "breach of shareholder rights/receiver/liquidation," and "breach of fiduciary duty." [9]

---

[9] As a technical matter, only two of these "claims" are actually causes of action.  One of them, the claim for an "accounting," is simply a potential *remedy* for violation of shareholder rights.  However, because the Court determines that all the shareholder claims fail as a matter of law, this distinction is immaterial.

Both sides concede that Delaware law applies to these claims. Defendants argue that they are barred by the statute of limitations like the contract claims.

Yet, unlike the contract claims, it is not apparent on the face of the Complaint that these claims are time-barred. Whitney avers that "Morrison has refused and *continues to deny* Whitney access to any of the Corporate Defendants' . . . books and records, his right to participate in [] governance or management and rightful share of the profits." (Compl. ¶ 52 (emphasis added).) The Complaint provides no dates when Whitney demanded access or when Morrison allegedly refused. Since it is not clear on the face of the Complaint that these claims are barred by the statute of limitations, the Court cannot dismiss them on that basis at this juncture. See Bricton, 164 F.2d at 110-11.

This does not end the inquiry, however, because the Court determines these claims have been insufficiently pleaded under Twombly. One cannot claim violations of shareholder rights or fiduciary duties owed to shareholders if he is not a shareholder. Ownership is a necessary element of the claims. Yet Whitney himself is unsure whether he ever owned any shares of TGI or any other corporation, or whether he simply agreed (or thought he agreed) to purchase them and suffered a "breach" of that agreement when Defendants failed to issue or transfer the shares to him. (See Mem. in Opp'n at 17–18 ("Morrison, TGI's, and MTI's failure to issue the shares (*assuming that to be the case*) that Whitney paid for constitutes a material breach of contract. . . . *If the shares have been issued,* Whitney's claims are based on his shareholder rights." (emphases added).)

In the Court's view, these claims are entirely implausible based on the pleadings. He asks this Court to believe that he agreed to purchase shares of TGI and various other

14

entities for $150,000, yet he apparently has no record of this transaction, no record (nor even any knowledge) of whether he was ever issued the shares he believes he purchased, and, despite being continually denied the benefits of ownership of the corporations he believed he bought shares of, he waited *more than five years* before seeking any relief. This simply does not pass the "smell test."  See, e.g., Norris v. Housing Authority of City of Galveston, 980 F. Supp. 885, 892 (S.D. Tex. Nov. 3, 1997) (dismissing claim where the plaintiff's allegation "fails the 'smell' test").  Because Whitney has not pleaded plausible facts suggesting that he owned the shares, his claims for violations of shareholder rights cannot survive.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. 6) is **GRANTED.**  Counts I-VI and X of Whitney's Complaint (Doc. No. 1) are **DISMISSED WITH PREJUDICE**, and Counts VII-IX are **DISMISSED WITHOUT PREJUDICE.**[10]

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: August 17, 2011                             s/Richard H. Kyle
                                                   RICHARD H. KYLE
                                                   United States District Judge

---

[10] The Court notes Whitney has already had three chances to plead his claims, having filed two amended complaints (only one of which was in response to an Order to cure defects in establishing jurisdiction).  Furthermore, he has not sought leave to amend, even after acknowledging at oral argument that his Complaint was "maybe inartfully drafted."  Under these circumstances, the Court determines dismissal without an opportunity to re-plead is appropriate.